## WORTZ *v.* FORT SMITH BISCUIT COMPANY.

### Opinion delivered October 21, 1912.

1. TRIAL—DIRECTED VERDICT—EVIDENCE.—It is proper to direct a verdict for defendant only when, under the evidence and all reasonable inferences deducible therefrom, the plaintiff is not under the law entitled to recover. (Page 528.)

2. MASTER AND SERVANT—DEFECTIVE MACHINERY.—Where a foreman, not having the duty to make repairs, was injured by the neglect of the manager of the master to exercise ordinary care to perform the duty of making repairs, such negligence renders the master liable for resultant injuries to such foreman. (Page 531.)

3. SAME—ASSUMED RISK.—Where a servant was injured while putting a belt upon machinery while in motion when he had been warned of and knew the danger of doing so, he will be held to have assumed the risk and can not recover therefor. (Page 532.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

*Read & McDonough,* for appellant.

A master owes the same duty to a foreman to provide safe machinery and instrumentalities with which to work that it owes to other employees. 98 Ark. 34. The risks and hazards incident to the set-screws and pulleys were not open and obvious, and were not risks that were known to the plaintiff. 27 Ark. 347. Where, as in this case, the plaintiff was acting under the direct commands of the master and was performing work, as the undisputed evidence shows, which was not in the line of his duty, it would be error to instruct the jury that he assumed all risks of which he knew or could have known by the exercise of ordinary care.

Such being the case, it was patent error to instruct a verdict in favor of the defendant. 97 Ark. 358. A servant assumes only ordinary risks. 97 Ark. 358; *Id.* 486. Under the circumstances shown in evidence, it is always a question of fact for the jury to determine whether or not the complainant assumed the risk, or was guilty of contributory negligence. 97 Ark. 553; 98 Ark. 34; 89 Ark. 522; 95 Ark. 291; 93 Ark. 564; 92 Ark. 102; 92 Ark. 502; *Id.* 554; 91 Ark. 86; *Id.* 102; *Id.* 388; 90 Ark. 145; *Id.* 223; *Id.* 543; *Id.* 555; 88 Ark. 20; *Id.* 28; 77 Ark. 367; 78 Ark. 38; 82 Ark. 534. A servant acting under orders does not assume the risk. 67 Ark. 377; 77 Ark. 556; 71 Ark. 55. An order from the master relieves from the doctrine of assumed risk, unless it is shown that the danger is so patent that no person of ordinary prudence would have obeyed. 77 Ark. 458; 65 Ark. 138; 76 Ark. 184.

*Ben Cravens, John H. Vaughan, C. B. Fisher* and *A. L. Berger,* for appellee.

1. The evidence does not tend to prove negligence on the part of defendant, nor that the proximate cause of the injury was any of the acts or omissions alleged as negligence in the petition. The injury itself is not evidence of negligence, and it will not be presumed.

2. If there are any facts disclosed by the evidence which tend to prove that appellee was in any respect guilty of negligence towards appellant, it is clear that there was concurring negligence on the part of appellant which contributed to the injury. Appellant's own testimony shows that he had been warned and knew of the danger of attempting to put on the belts without stopping the machinery, and knew of the order not to put on the belt while the machinery was in motion. 142 S. W. 153, 154; 141 S. W. 1176, 1179; 61 N. E. 262; 32 So. 232; 90 Ark. 223, 119 S. W. 73; 90 Ark. 555; 120 S. W. 146; 130 N. W. 630; 96 Ark. 466; 132 S. W. 212; 84 Ark. 337; 105 S. W. 878; 120 Am. St. Rep. 74; 140 S. W. 584; 79 Ark. 437, 96 S. W. 183.

3. Appellant assumed the risk and can not recover. He knew and appreciated the dangers incident to the work in which he was engaged. He was not relying upon a promise to repair. The dangers were open and obvious, within the

knowledge not only of the master but also of appellant through the caution given him by the manager, the order forbidding that method of doing the work, and through his own observation. A safe way existed which he had been directed to use, yet he chose the dangerous way. 142 S. W. (Ark.) 1131, 1132; 73 N. W. 992, 993; 141 S. W. 1176, 1178; 77 Ark. 367, 92 S. W. 244; 92 Ark. 102, 122 S. W. 116; 90 Ark. 387, 199 S. W. 277; 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; 97 Fed. 423, 38 C. C. A. 239; 82 Ark. 534, 103 S. W. 158, 11 L. R. A. (N. S.) 720; 95 Ark. 136; *Id.* 291; *Id.* 560; 96 Ark. 387; *Id.* 206; 97 Ark. 486; 135 S. W. (Ark.) 892; 140 S. W. (Ark.) 14, 21; 140 S. W. (Ark.) 587; 138 S. W. (Ark.) 469; 145 S. W. (Ark.) 562, 563; *Id.* (Ark.) 564, 566.

FRAUENTHAL, J. This is an action instituted by Walter W. Wortz, the plaintiff below, to recover damages for an injury which he received while in defendant's employ, and which he alleged was due to its negligence. The defendant denied that the injury was due to any negligence upon its part, and pleaded as a bar to any recovery the plaintiff's assumption of the risk and his own negligence contributing to its cause. After the plaintiff had introduced his evidence and rested his case, the court directed the jury to return a verdict in favor of defendant, which was done. From this action of the court the plaintiff has prosecuted this appeal.

In reviewing this ruling of the court directing a verdict, the evidence adduced upon the part of the plaintiff must be considered in the light most favorable to his cause of action. If under that evidence, however, with every reasonable inference of fact that is deducible therefrom, the plaintiff is not under the law entitled to a recovery, then the ruling made by the court is correct.

The evidence adduced upon the part of the plaintiff consisted of the testimony of two witnesses, the plaintiff himself and a witness who was not present when the injury was received, but who had special knowledge as to the character of the machinery at which plaintiff was injured, and as to whether it was in a resonably safe condition. The case thus made by this testimony is this:

The defendant is a corporation located at Fort Smith, and is engaged in the manufacture of crackers, fancy cakes, cracker

meal and other products of like character. In this factory the defendant has a number of machines, amongst which is one known as a cracker mill, which is used for the purpose of grinding crackers into meal. This machine was located on the lower floor of the building, and consisted of a hopper, burr and discs, in which the crackers were crushed. It was situated upon a platform about eight inches from the floor, and was driven by a belt four inches in width, attached to a pulley on said machine, and to a larger pulley on an overhead shaft, about eight feet above the machine. On the occasion of the injury, the plaintiff was directed by defendant's manager to grind some cracker meal, and he proceeded to this machine to perform that duty. He found that the belt was off, and it became necessary, in order to start the machine, to put the belt upon said pulleys. To do this, the plaintiff called to his assistance a girl employed at the factory, who held the belt upon the lower pulley while he climbed upon a step ladder to put the belt on the top pulley while the same was in motion. The plaintiff climbed up the ladder, and put the belt over the top pulley while in motion, and then proceeded down the ladder while the belt and machinery were in motion. In making the revolutions, the belt jumped off the pulleys, and the lower end was thereby whirled about. As plaintiff was in the act of stepping from the ladder to the floor, this end of the belt caught him around the arm and whirled him around the shaft, breaking his right arm so as to necessitate its amputation, and injuring him on other parts of his body.

It appears that the burr or discs had become broken, probably a year or more before the accident, and in order to grind the crackers it was necessary to tighten them up to an extent which would somewhat choke the machine while running, and thus tend to throw the belt from the pulleys; that the platform upon which the machine stood had become somewhat shaky, and, as plaintiff described it, "wobbly" to some extent, and thereby also tended to throw the belt off the pulleys. It also appears that upon the line shaft to which the top pulley was attached there was also attached a smaller pulley, about two or three inches from the larger pulley, and that from the journal of the larger pulley there extended some set-screws for a distance of an inch or more.

The plaintiff was twenty-seven years old, and had been engaged for a number of years in working with machinery similar to that used in defendant's factory. His father was president and manager of defendant's company, and plaintiff had been working at its factory for about four years prior to the injury. He began as an ordinary employee, and had been advanced until he was made foreman, about a year and a half before the injury, and continued in that position up to the time of the injury. He was not a machinist, but it was his duty as foreman to look after the machinery in a general way, repairing the smaller defects in it himself and reporting to the manager larger defects which he could not fix. He had authority to employ and discharge servants engaged at the factory, but was himself subject to the orders of the manager of the company. He testified that he had noticed for some time prior to the injury the broken condition of the burr, and called the manager's attention to it, who had promised to repair it; but he continued to work at the machine for a long time after that without complaint and, as we think, without any reliance upon any promise to repair. It also appears that he was well acquainted with the fact that the stand upon which the machine was placed was somewhat shaky long prior to the accident. In placing the belt upon the top pulley, the plaintiff was a foot or so from it, and reached his arm over the smaller pulley upon the shaft, located two or three inches from it, and this and the obtruding set-screws were directly in front of him as he faced them.

The expert witness introduced by plaintiff testified: "When standing on the floor, I could see this line shaft and the pulleys and the set-screws; they were open to common observation. Anybody, as a stranger looking at it, could see it, and it was easily discernible." He also testified that if one had gone up to the place where these pulleys were located on the shaft as many as six times to put the belt on, with the machine in motion, the pulley and set-screws were very easily discovered. He said: "I can not conceive of anybody going in twelve inches of the line shaft and not being able to see the set-screws and collars; he is bound to see them."

It further appears from the testimony of the plaintiff that he had put the belt upon the pulley in the same manner

as upon this occasion at least six times prior to the accident; that he had learned and knew that in placing the belt on the pulleys while in motion it was liable to fly off, and had done so several times before, wrapping itself around the shaft, with its lower end whirling around, endangering those near it. He testified that defendant's manager had ordered him not to put the belt on the pulleys while in motion, but to stop the machinery and put the belt on the pulleys while at rest. He also testified that this order was often disregarded with the knowledge of the manager. He testified further, however, that he knew it was dangerous to put on the belt without stopping the machinery.

In his complaint, the acts of negligence attributed by the plaintiff to the defendant consisted (1) in permitting the cracker mill to remain out of repair and in a defective condition, causing the belt to be thrown from the pulleys; and (2) in placing the two pulleys upon the shaft so close together with the set-screws protruding therefrom, so that when the belt, which was wider than the distance between the pulleys, flew off it caught between them and thus became fastened, so that, instead of permitting the shaft to revolve beneath it, it was whirled around the shaft, making it dangerous to those near it.

It is contended by counsel for defendant, that, if these conditions of the machine and pulleys were defective, it was attributable to the negligence of the plaintiff, rather than to that of the defendant. They urge that plaintiff was foreman at the factory, and as such foreman it was his duty to discover defects in the machinery and to remedy such as were of an ordinary character, and to report those which were of a nature that he could not remedy; and that he failed to perform that duty. The plaintiff, however, testified that he was not a machinist; and it might be inferred from his testimony that it was not within the province of his duty to make these repairs, but that this was the duty of the manager. If, therefore, this duty was imposed upon the manager, and plaintiff was injured through the failure on the part of the manager to exercise ordinary care to perform that duty, such negligence of the manager would be the negligence of the defendant, for which it would be liable for resultant injuries to plaintiff,

regardless of the grade of his service as foreman. *Bryant Lumber Co.* v. *Stastney*, 87 Ark. 321; *Oak Leaf Mill Co.* v. *Smith*, 98 Ark. 34.

But, in the view which we have taken of this case, we do not find it necessary to pass upon the question as to whether or not the testimony was sufficient to warrant a finding that the injury was due to an act of negligence upon the part of the defendant. We are of the opinion that the testimony clearly shows that the injury which plaintiff received was due to one of the risks which he assumed by reason of his employment.

According to his own testimony, the plaintiff knew of any defect which there was in the cracker mill and in the platform on which it stood. With this knowledge he had worked at the machine, while this condition existed, for probably more than a year prior to the accident. While he called the attention of the manager to this defect, and the manager promised to repair it, still his testimony clearly shows that he continued to work at the mill without any reliance upon that promise, and without any complaint of the failure to repair it.

But we do not think that the defective condition of the cracker mill or the shaky condition of the platform were the proximate cause of the injury. The testimony shows that the machine had not been in operation for some days, and was not choked at the time of the injury, and that the belt was placed upon the pulleys. The proximate cause of the injury was the whirling of the belt. Counsel for plaintiff concede that this was the proximate cause of the injury, but they earnestly contend that it was due to the defendant's negligence in permitting the two pulleys on the shaft to be placed so close together, with the set-screws protruding from one of them, thereby catching the belt between them and causing the upper end of it to become fixed, and thus to wrap around the shaft. The undisputed evidence shows, however, that the pulleys and set-screws could be readily seen from the floor. They were plainly open to observation, and they could more certainly be seen when one was within a foot of them, as plaintiff had been upon a number of occasions, and was upon the occasion of this injury. The expert witness introduced by plaintiff testified that he could not conceive of any one going within

twelve inches of this shaft and not being able to see the set-screws and the position of the pulleys. He said he was bound to see them. The plaintiff had placed this belt upon the pulley at this place under the same conditions for at least six times prior to the accident. Under this testimony, therefore, we are compelled to say that the plaintiff must have seen the smaller pulley and set-screws upon the shaft and the condition of the machinery. He had been warned of the danger of putting the belt upon this pulley while the machinery was in motion, and himself testified that he appreciated the dangers arising therefrom. In fact, he had been ordered not to place the belt upon the pulleys while the machinery was in motion. While he contends that this order was abrogated by its violation, nevertheless it shows that he fully appreciated the danger of performing this duty in this way. If the injury was due to these defects of which he now complains, the testimony shows that they were open and obvious, and that he fully appreciated the dangers arising therefrom. The risk of the danger arising from putting the belt upon the pulley under these conditions, while the machinery was in motion, was one which he necessarily assumed.

The injury which plaintiff received is a very severe one, but under his own testimony it is one for which under the law the defendant is not liable.

The judgment is accordingly affirmed.