MAGNOLIA PETROLEUM COMPANY *v.* JOHNSON.

Opinion delivered July 11, 1921.

1.  MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—Evidence held to sustain a finding that one engaged in handling oils and gasoline for an oil company was its servant, and not an independent contractor.

2.  MASTER AND SERVANT—INDEPENDENT CONTRACTOR—TEST.—The test as to whether an oil company was liable for negligence in the delivery of gasoline to a consumer, or was dealing through an independent contractor, is not whether the company actually directed the manner of its delivery, but whether it had a right to control the delivery.

3.  NEGLIGENCE—SALE OF GASOLINE.—Evidence *held* to sustain a finding of negligence on part of defendant's servants in the mode of delivering gasoline to a purchaser, and that plaintiff was not guilty of negligence that contributed to the resulting injury.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Cockrill & Armistead* and *John W. Newman,* for appellant.

Defendant was entitled to a peremptory instruction in its favor, (1) because the drivers were employees of an independent contractor, and (2) because the plaintiff was equally negligent as the drivers.

There was no evidence as to defendant retaining any control or direction over the work of the drivers making deliveries. 105 Ark. 477; 118 Ark. 561; 128 Minn. 508; 152 Mich. 613; 203 N. Y. 191.

Plaintiff was equally as negligent as the drivers. 96 Ark. 500.

*John E. Miller* and *C. E. Yingling,* for appellee.

(1) The drivers were employees of appellant. Independent contractor defined. 135 Ark. 117; 2 Words and Phrases p. 1034. See 144 Ark. 401; 132 U. S. 523; 14 R. C. L. p. 67; 38 A. S. R. 564.

(2) The question of contributory negligence was for the jury.

SMITH, J. Appellee recovered judgment against appellant company for the value of a barn and its contents alleged to have been negligently set on fire by the agents, servants and employees of appellant. Liability on the part of appellant is denied upon two grounds, first, that it was not responsible for the acts of the persons whose negligence caused the fire, and, second, that appellee was guilty of contributory negligence which defeats his right of recovery.

Appellant is engaged in producing and selling oils and gasoline, with its principal Arkansas office in the city of Little Rock. In order to supply the territory in and about Searcy appellant entered into a contract with one J. N. Smith, who was in the transfer business at Searcy. Under this contract the company shipped oil and gasoline to Searcy and stored it in their tanks there for sale, with Smith in charge.

Smith undertook to handle the property with proper care, and to make sales and deliveries of gasoline on a commission basis, graduated according to the expense of delivery. The commission on deliveries in the city was two cents per gallon and to country points was three cents.

The company supplied the containers for the oil and gasoline, while Smith, in consideration of the commissions paid, used the teams, wagons and drivers employed by him in his transfer business. The company was not consulted in the employment or discharge of these men, whose wages were fixed and paid by Smith.

The contract is a very elaborate one, and designates Smith throughout as the company's agent, and he signed it in that capacity.

The company furnished the gasoline and oil and specified the prices at which it should be sold. The company required the drivers of the wagons making deliveries in the country to use sales' slips furnished by it. These slips were signed by the driver, and were so prepared that a carbon copy might be delivered to the purchaser. The originals were turned into the company, and in cases where accounts were run bills were sent out from the company's office in Little Rock. Any money collected by the drivers was turned in by them to Smith, and all checks given in payment for oil or gasoline were made payable to the order of the company. The company caused to be painted on the wagons and tanks used in making deliveries the words, "Magnolia Petroleum Company," this being the name of appellant company.

Section 21 of the contract between Smith and the company contains the following recitals: "It is expressly understood and agreed that the above rates of commission apply on sales made by agents, and the commissions to apply on sales made by salesmen, managers and others, and the commissions to apply on transfers between agencies, on home office contracts and on railroad contracts, are allowed as full compensation to agent for service to be rendered in connection with the proper handling of the company's business in the territory assigned to the agency. The duties of the agent in return for said compensation, includes the proper care of stock placed in his charge, storage tanks, warehouse and

other equipment, soliciting and carrying on business under the direction of the division manager, and other authorized representatives, and the making of deliveries, the collecting of accounts, the making of reports required, unloading cars, and such other services as may be required for the proper conduct of the business.''

Section 22 of that contract provides that the company shall furnish, free of charge, all forms, stationery and postage for the proper conduct of the business, and that all other items of expense shall be assumed by the agent, Smith.

No complaint is made of the instructions given on this subject. The insistence is that the undisputed evidence shows that Smith was an independent contractor, and that the drivers of the wagons were the servants of Smith.

The majority of the court are of the opinion that the facts stated made a case for the jury, and that the contract between the company and Smith created the relation of principal and agent, and that the company had reserved the right to control and direct the manner of making deliveries of oil, and that, while no directions were given in the particular instance as to the manner of delivering the oil to appellee, which caused the fire that destroyed the barn, the company had reserved the right of direction; and, in the discharge of all duties, whether performed by Smith himself or by men employed by him, in selling and delivering the oil, the work done was that of the company.

We recognize, of course, that the designation of Smith as ''agent'' in the contract is not conclusive of the relation. *J. R. Watkins Medical Co.* v. *Williams,* 124 Ark. 545. The test is, not whether the company actually directed the manner of the delivery of the oil, but is whether the company had the right to control the delivery. 14 R. C. L., section 3, p. 67, of the article on Independent Contractors. And the majority are of the

opinion that the contract between the company and Smith, as interpreted by the conduct of the parties under it, shows that it was the purpose of the company to retain complete control of everything done in connection with the sale and delivery of the oil, and that the testimony, in its entirety, warranted the finding that the drivers of the wagon were themselves the servants of the company.

The majority are also of the opinion that the question of appellee's contributory negligence was properly a question for the jury. Instructions on the question of negligence of the drivers and the contributory negligence of appellee correctly declared the law. The insistence on this branch of the case is that under the undisputed evidence appellee was as negligent as were the drivers of the wagon, and that if it be said that the testimony supports the finding that the drivers were negligent it must also be said that appellee was guilty of contributory negligence.

The testimony on this branch of the case is as follows: The wagon used in delivering oil to country customers was driven by Ernest Neal and Jim Mann. They drove the wagon to the home of appellee, and arrived there about dark on March 5, 1920. When they arrived, they called and asked appellee if he had a gasoline tank and, if so, where it was. Appellee answered that he had a tank, and that the tank was in his barn. Johnson was told to light his lantern and bring it to the barn. This appellee did, and he relates what happened as follows: ''They drove the wagon up in front of the door, and backed right in front of the car shed door. Jim Mann started to draw the gasoline. He started to unscrew these taps I call them, in the end of the steel barrel; I had seen it drawn that way before; I had seen them take the small tap out; and it seemed like it did better, and I mentioned it to him, and he said, no, he thought he could manage it all right that way, and he just took it out, the gasoline was flowing in the barrel back and forth. When he took the tap out, he said, 'hold your light up where I can see.' I was standing something like six or eight feet

from him with the lantern down by my side, and when he told me to hold the light up I held it up waist high, and just about that time he took the tap out and the gasoline flew all over him, all over his hands and in front of his clothes, and it caught him afire. I saw the blaze leave the lantern and go to him. The blaze went right up into the barn and ignited it. Before he threw the barrel down and took the big bung out I suggested that he first take the small tap out. They usually pour the gasoline out of the barrel into a ten-gallon can, and then pour it into the gasoline tank. All the time before that they poured the gasoline through a rubber hose.''

We think this testimony legally sufficient to support the finding that Neal and Nann were guilty of negligence in the manner employed of transporting the gasoline from the barrel to the tank, in that they did not use the rubber hose; nor did they remove the tap before tilting the barrel; nor did they first pour the gasoline into the ten-gallon can. The jury might have found that if any one of these things had been done the gasoline would not have splashed out over Mann.

The majority are also of the opinion that the question of appellee's contributory negligence was properly a question for the jury. It is true he held the lantern which caused the explosion, but Mann and Neal were in charge of the barrel, and they ignored appellee's suggestion, which, if it had been accepted, might have prevented the explosion. Moreover, the jury might have found that Mann and Neal were more experienced in handling gasoline than appellee was, and that appellee had, to that extent, the right to rely upon this superior knowledge and experience, inasmuch as the act being done was not so obviously dangerous that it must be said as a matter of law that an ordinarily prudent man would not have participated in it to the extent that appellee did.

No error appearing , the judgment is affirmed.