WRIGHT v. McDANIEL.

4-6645                                            159 S. W. 2d 737

Opinion delivered March 9, 1942.

*Elmer S. Tackett* and *Joe W. McCoy,* for appellant.

*William H. Glover* and *Richard M. Ryan,* for appellee.

MEHAFFY, J. On June 17, 1941, Hugh McDaniel, a minor, by his father and next friend, Virgil McDaniel, filed suit in the Hot Spring circuit court against C. W. Wright, N. F. Nooner, J. A. Braughton and M. Braughton, doing business under the partnership name of Wright-Braughton Lumber Company. He alleged that he was a minor, 18 years of age; that on May 27, 1940, he was employed by the defendant company off-bearing from a saw, which was used by the company in cutting slabs into wood by use of cutoff saws; that while he was working under orders of defendant's foreman and while exercising ordinary care for his own safety, and because of the negligence of defendant in furnishing him an unsafe place to work and unsafe machinery with which to work, he became totally and permanently disabled when a defective belt caught his arm and jerked it into a pulley; that from said injury it was necessary to amputate his arm at the elbow. He further alleged that de-

fendant company was operating its belt and pulley in a defective condition, which was known to defendant, but unknown to plaintiff; that the belt came off the pulley and that he attempted to put it back by the use of his hands, as was the customary way to replace said belt; that because of the defective condition of the belt and the excess of glue and dope on it to keep it from slipping, which had been placed there by the defendant, his arm was jerked into the pulley and so mangled and torn that his arm had to be amputated; that the defendant was negligent in not having a trough for said belt to run in; that the pulley's condition was known to the defendant and unknown to plaintiff; that the foreman, on the morning of the injury, had instructed the employees working around said saw that if the belt came off the one closest to it was to put it on; that when the belt came off he obeyed the command of the foreman and replaced the belt as he was directed to do; that because of his inexperience and age he had never replaced any belts before and he relied upon the superior knowledge of his foreman and agent of the defendant company; that because of the negligence of the defendant he was damaged in the sum of $50,000.

Summons was issued and served, and thereafter defendant filed a motion to quash the service of summons, alleging that the plaintiff was not a resident of Hot Spring county; that at the time of the accident he was not a resident of that county, and that the complaint does not show that he was such a resident; that the defendants operate no place of business in Hot Spring county, and that plaintiff's allegations are a mere subterfuge to attempt to confer jurisdiction upon this court for a suit in the nature alleged in the complaint, and prayed that the service of summons be quashed.

The court overruled the motion to quash and defendants saved their exceptions.

Thereafter the defendants filed answer in which they reserved all rights and defense interposed by the original motion to quash service of summons and which answer was a general denial of the allegations of the

complaint; that if Hugh McDaniel was injured in any manner whatsoever, it was due to his assumption of risk; that if he was employed at that time he was employed by an independent contractor, engaged in an individual enterprise of his own and was in no manner accountable to the defendants for his acts or employees; that if the independent contractor employed Hugh McDaniel the defendants had nothing whatever to do with such agreement between them and was in no manner responsible thereunder; that if Hugh McDaniel was injured in any manner it was due solely to his own negligence and carelessness, and not in any manner due to any act, orders or negligence of the defendants.

Defendants and plaintiff both introduced testimony on the motion to quash, which motion was overruled by the court, to which ruling defendants saved their exceptions.

J. A. Braughton testified for the appellee as to the partnership of appellants.

Virgil McDaniel testified that he is the father of Hugh McDaniel; at the time Hugh was injured he was 18 years old; that plaintiff has lived in Malvern since he was five years old and is living there now; that on May 30, 1940, Mr. Evans and witness' brother, who was living at Hot Springs, came to witness' house and notified him that Hugh was injured; Hugh had been visiting his uncle about a week when he was injured; witness went to Hot Springs and found his son in bad condition; Hugh stayed in the hospital four weeks and one day; his doctor bill was $300 and hospital bill $141; witness went to the Wright-Braughton Lumber Company and talked to Braughton, who seemed very sorry that the boy had been hurt; Braughton pointed out to witness the belt, which he examined and found in very bad condition, broken in five or six places and put back together with lace strings and badly glued; talked to Braughton after this examination and Braughton told him the belt should have a trough over it before it was operated; mill was operated with one steam boiler and one main drive shaft on the Wright-Braughton property.

Hugh McDaniel testified in substance that he was 18 years old when he was injured; went to Hot Springs to visit his uncle; was there about a week before he got a job; went to the Wright & Braughton mill to seek employment; his uncle had told him to see Evans; the mill there was under the same shed and the same boiler pulled the whole mill; Evans told witness he would let him know when he needed him; came by his uncle's house Sunday and told him to come to work the next day; worked from Monday until Thursday, when the injury occurred; saw Mr. Braughton pretty often, three or four times a day; Braughton told them they would have to get the wood piled up, if they didn't he would get some one else; Evans told witness if Braughton told him to do anything he would have to do it; he went to work and stopped by the mill whistle; had not had a pay-day when he was hurt; Evans came to the hospital and told him that he had six days' pay coming to him, and witness told him to take it to the house; Evans was working for Wright-Braughton; all of them worked under the same shed; Braughton was there when he received his injury. Witness testified at length on cross-examination about when he quit school and what grade he was in, and that he was working for the Wright-Braughton Lumber Company.

J. A. Braughton testified to the effect that Hugh McDaniel was never employed by the company and never worked at his mill; that there was a big shed over the mill and the line shaft runs underneath the floor and sticks out possibly 20 feet; the wood shed is not under the main shed with the rest of the mill; that Evans was an independent contractor and not in the employ of the defendant. He contradicted appellee's evidence on the question of whom he was working for.

There were a number of other witnesses, but it would serve no useful purpose to set out the testimony in full. Attention will be called in the opinion to such portions of it as are thought to be necessary.

There was a verdict and judgment in favor of appellee for $3,500. Motion for new trial was filed and overruled, and the case is here on appeal.

Appellants contend, first, that the Hot Spring circuit court had no jurisdiction, and second, that the appellee did not work for the company, but worked for Evans, who was an independent contractor.

The evidence shows conclusively, we think, that the appellee was a citizen of Hot Spring county. Both Hugh McDaniel and his father testified that he lived with his father in Hot Spring county, and that he was only 18 years of age.

The only other defense interposed is that Evans was an independent contractor and that appellee worked for him and not for the company.

"It is frequently asserted that whether the relation of master and servant exists in a given case is usually a question of fact. Where the contract is oral and the evidence is conflicting, or where the written contract had become modified by the practice under it, the question as to what relation exists is for the jury under proper instructions. If the contract is oral, and if more than one inference can fairly be drawn from the evidence, the question should go to the jury whether the relation is that of employer and independent contractor or that of master and servant." Moll, Independent Contractors and Employers Liability, p. 62, *et seq.*

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact." 31 C. J. 473, 474.

It is true that one of the partners testified that Evans was an independent contractor; but another one testified that he knew nothing about it; and yet another one, Noonan, took the boy to the hospital and told the attendants there that the boy was working for the lumber company. When he made that statement he knew all about when and how the boy had been injured, and knew that he was working at the cut-off saw.

The contract that appellants claim to have had with Evans was oral and depended upon evidence entirely. It was therefore a question of fact for the jury. Evans also testified that he was an independent contractor, and that if the belt slipped off he or his employees had a right to signal the engineer and he would stop the mill. The evidence shows that they all began work when the mill whistle blew, and stopped when the mill stopped. All the power that operated the cut-off saw came from the mill company's engines. As a matter of fact, the appellants testify that they made a contract with Jim Smoke, and Smoke sold to McGuire, who in turn sold to Evans. Appellants do not claim that they had any separate or different contract with Evans.

It is inconceivable that, if the company had nothing to do with the cut-off saw and Evans was an independent contractor, one of the partners told the attendants at the hospital that appellee was working for them when he was injured. There are many circumstances which the jury had a right to consider tending to show that Evans was in the employ of the mill company. It was apparent to anyone who visited the mill that it was all one industry, and the undisputed proof shows that the mill company furnished all the power.

"The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions." *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798; *St. L. I. M. & So. Ry. Co.* v. *Hempfling,* 107 Ark. 476, 156 S. W. 171; *St. L. I. M. & So. Ry. Co.* v. *Owens,* 103 Ark. 61, 145 S. W. 879; *Midland Valley Ry. Co.* v. *Ennis,* 109 Ark. 206, 159 S. W. 214; *St. L. - S. F. Ry. Co.* v. *Bishop,* 182 Ark. 763, 33 S. W. 2d 383.

This court recently quoted from the case of *Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W. 2d 411, as

follows: "The conclusion as to the relationship must be drawn from all the circumstances in proof, and where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant." *Hobbs-Western Co.* v. *Carmical,* 192 Ark. 59, 91 S. W. 2d 605.

If the appellants ever had a contract with Evans, it was an oral one, and they do not deny that they said if the wood was not cleaned up, they would get some one else to do it, evidently meaning that they had a right to discharge him at any time. Moreover, the contract was not for any specified time, and of course the mill company had a right to terminate it at any time.

This court said recently: "Nevertheless, under this state of facts we are unwilling to say, as a matter of law, that Douglas was an independent contractor for the negligent acts of whose servants appellant would not be liable." *Long-Bell Lbr. Co.* v. *Tarver,* 196 Ark. 275, 118 S. W. 2d 282.

"The fact that the employer may at any time terminate the performance of the work by discharging the employee is of considerable weight, as tending to show that the employee is not an independent contractor. *Bristol, etc. Co.* v. *Industrial Comm.,* 292 Ill. 16, 126 N. E. 599." 31 C. J. 475.

Practically all authorities hold that where it is claimed that an oral contract exists, and it is one which the employer may terminate at any time, it is a question for the jury whether the relation is that of an independent contractor or master and servant.

But all these questions were questions of fact for the jury. They saw the witnesses, knew their manner of testifying and were much more able to judge of the credibility of the witnesses and weight to be given to their testimony than are we who read the printed record. We have many times held that in determining whether the evidence is sufficient to support the verdict of the jury, it must be viewed in the light most favorable to

appellee, and if there is any substantial evidence, whether direct or circumstantial, to support the verdict, it is conclusive here.

Moreover, we do not pass on the preponderance of the evidence. Even if we believe that the preponderance was against the finding of the jury, still we would be bound by their verdict if there is any substantial evidence to support it.

The judgment of the circuit court is affirmed.