ARK. INDEPENDENT OIL MARKETERS ASS'N, INC. *v.*
MONSANTO CHEMICAL CO.

5-784                                              284 S. W. 2d 127

Opinion delivered November 28, 1955.

*Tom Gentry,* for appellant.

*Davis & Allen* and *H. D. Dickens,* for appellee.

PAUL WARD, Associate Justice. Appellant, Arkansas Independent Oil Marketers Association, Inc., instituted this action in the Sebastian Chancery Court, Fort Smith District, against the Lion Oil Company, seeking to enjoin said company from allegedly selling gasoline at tank wagon prices which are below the cost price of such gasoline. Summons was served on the Lion Oil Company by delivery of same to J. Aubrey Yates whose residence was in Sebastian County. Service was had on Yates on the assumption that Lion Oil Company maintained a place of business in Fort Smith and that Yates was in charge of this business as agent of the company, and that the service was proper under Ark. Stats., § 27-347.

Lion Oil Company filed a motion to quash the above described service of summons on the ground that Yates was not its agent. The trial court sustained said motion and the Association has appealed. Before submission of the cause in this court and on motion of the Lion Oil Company, the Monsanto Chemical Company was substituted as appellee.

Briefly stated, it is the contention of appellant that Yates is an agent of appellee, and it is the contention of appellee that Yates is an independent contractor, and

therefore not a proper person for service under the above mentioned statute.

In order to intelligently discuss the issue here presented it is necessary to set out in somewhat detail the terms of the written contract existing between the Lion Oil Company and Yates, and also the testimony introduced at the hearing on the motion. Hereafter when we use the term "appellee" it will include the Lion Oil Company.

Appellee manufactures gasoline and allied products in El Dorado, Arkansas, and distributes the same in the Fort Smith area through a warehouse or bulk station operated by Yates. The products are received by Yates on consignment, with the title remaining in appellee. The gasoline is stored in six large tanks and the other products in a warehouse, all located on a parcel of land in Fort Smith, and all of which are owned by appellee. Among other things the "Distributor's Contract" provides: (5) The distributor [Yates] shall maintain records of all products received at the bulk plant and thereafter sold by him, and shall at the request of appellee furnish detailed reports concerning receipts, sales and inventories; (6) The distributor shall sell said products only at prices fixed by appellee from time to time; all sales shall be for cash but distributor may make authorized credit sales in the name of appellee, and; the distributor shall immediately remit to appellee the full proceeds of all sales; (7) The distributor shall be paid a commission on all sales as per the schedule therein set forth; (8) The distributor shall furnish at his expense all trucks, tanks and other equipment necessary for selling and delivering said products, and shall employ at his expense all persons who may be required to assist him; (9) The distributor shall maintain at the bulk plant a telephone listed in the name of appellee, and he shall at his expense, when requested (but at least once a year), paint all motor vhicles used in distributing said products, the paint to be furnished by appellee; (13) Appellee has the right to make a complete audit of the distributor's inventories, records and accounts from time to time with-

out notice, and; (15) The agreement shall continue at the will of the parties and either party may cancel at any time without notice. There are some other provisions in the contract which we shall note later.

Testimony introduced by appellee to sustain its motion in the trial court shows that on occasions Yates receives gasoline pumped from Oklahoma to a station near Fort Smith, places the same in storage tanks and receipts for it in the name of appellee; that he collects for all gasoline and all products sold and places the money in a local bank in appellee's name; that he looks after appellee's warehouse located on the same plot of ground with the tanks, and; that he makes reports of all sales and inventories on blanks furnished by appellee.

Appellant relies most strongly on the case of *Arkansas Power and Light Company* v. *Hoover,* 182 Ark. 1065, 34 S. W. 2d 464, quoting therefrom the following:

"In the instant case the agent was entrusted with the money collected, his duty being to receive and receipt for it, and transmit it to the company, a business as important, if not more so, than any other business it had in the county, and if he were competent to conduct such a business, he could be depended upon to notify the corporation of service upon him. The important thing in determining this question is that the corporation itself established a place of business where its bills could be paid and receipted for, and when a corporation establishes such a place and receipts for money paid for its service through an agent, it has for all reasonable and practical purposes established such a place of business as mentioned in the statute."

The pertinent facts in that case were these: L. A. Atkins was the manager of a drug store at Waterloo, Arkansas, in which store the Power Company had no interest and paid no rent. Atkins merely collected and receipted for light bills as people would come in the store to pay him, and none of his duties required him to go outside the store. As the bills were collected Atkins transmitted the money to the Power Company. The bills

which Atkins collected were made out by the Power Company and by it mailed to him, and for his services he was paid a flat salary of $10 per month. Appellee considers this case inapplicable to the situation here principally because, it says, "the customers involved were customers of Arkansas Power and Light Company and not his customers."

Appellee for an affirmance of this case relies principally, if not entirely, upon the proposition that the testimony and the contract in this case show that Yates was an independent contractor as that term is defined in the case of *Moore and Chicago Mill & Lumber Company* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722, quoting the last paragraph on page 137 of the Arkansas Reports. We agree that this decision gives a correct and lucid enunciation of the elements creating an independent contractor. We must also agree that there are many indications disclosed by the testimony and contained in the contract that Yates occupies the relationship to appellee of an independent contractor. There are, however, certain other incidents of relationship disclosed by the contract and testimony which force us to the conclusion that Yates was, at least in some respects, an agent of appellee. This conclusion is sustained by the weight of the authorities which we have been able to examine.

Before proceeding further, however, we desire to point out three things that should be kept in mind in resolving the issue here presented: (a) In considering the written contract between Yates and appellee we must be guided by what control appellee was empowered to exercise over Yates rather than what power it actually did exercise. See 19 A. L. R. 20 and *Magnolia Petroleum Company* v. *Johnson,* 149 Ark. 553, 233 S. W. 680; (b) It is of no significance that Yates was paid a commission in this case rather than a salary as was the case of Atkins in the *Hoover* case, *supra.* See 116 A. L. R. 459, and; (c) We know of no logical or legal reason why Yates might not be an independent contractor in certain respects and at the same time, in other respects, be an agent

of appellee. See *City of Detroit* v. *Corey*, 9 Mich. 165, 80 Am. Dec. 78, and 19 A. L. R. 270, § 20.

As heretofore stated we think there are portions of the testimony and parts of the contract which strongly indicate that Yates was, in some respects, acting as an agent for appellee. It is not denied that Yates collected the money for all products sold and placed the same in a Fort Smith bank in the name of appellee, and Yates stated that he had no authority to check on the account. Appellee owned a warehouse located on the same ground as the bulk station in which, among other things, were stored tires, tubes, oil and case oil. After making this statement Yates was asked: "Q. Now, that property that is in the warehouse that belongs to Lion Oil—you have charge of the custody of that, don't you? A. Yes, sir. Q. It's up to you to look after it and see that nobody steals it? A. That's right." And again "Q. And you are charged by Lion Oil Company with looking after their property? A. Yes, sir." It appears that not all of the gasoline sold by Yates at the bulk station in Fort Smith is shipped to him from appellee's refinery in El Dorado. On occasions gasoline is piped from Oklahoma to a station near Fort Smith and then put in the storage tanks at the bulk station. On these occasions the gasoline is received and receipted for in the name of appellee.

There are portions of the contract itself which seem to us to indicate that appellee retained and could have exercised to some extent control over Yates. Subsection (B) provides that Yates may, at the request of appellee, secure and store products from a neighboring Lion Distributor and receive additional commission therefor. Section (10) provides that Yates shall receive and store certain equipment from appellee to be loaned by appellee to persons to whom Yates made sales, and that Yates would comply with the policy of appellee in effect from time to time with respect to handling drums. Section (11) provides that Yates will, at the request of Lion, move equipment from one station in his territory to another in event appellee desires that to be done, and for such service appellee will reimburse Yates his costs in handling. Likewise appellee has the right to direct Yates

to move equipment from a location in his territory and transport it to his bulk plant for storage, appellee paying expenses. Section (12) provides for Yates to inspect tank cars shipped to his plant to ascertain if they are "filled to within 3 inches of the top of the shell," and if not Yates is to notify appellee's division manager. It is further provided that the cars shall not be unloaded until ordered by the division manager. Section (17) gives appellee the right, in certain circumstances, to insist upon "strict, full and punctual performance of distributor's obligations hereunder."

Without laying particular stress on any one of the items mentioned above to show the relationship of agency, it is our opinion that all of them together, including the entire contract and the testimony, show conclusively that such a relationship does exist between appellee and Yates. This view conforms with the statement in 116 A. L. R. at page 462 and 463 where this question is discussed under the heading "Tank Wagon or Wholesale Station." In referring to numerous cases dealing with this question it is there stated:

". . . and in the majority of such cases it has been held that such operator is a 'servant' or 'employee' of the oil company, rather than an 'independent contractor' as is commonly contended by the company, generally on the theory that although the terms of the written contract might indicate that the operator had the status of an 'independent contractor,' the company in actual practice retained such power to subject him and his employees to its will and direction that he was in fact a 'servant,' 'employee,' or 'agent,' . . ."

Numerous cases are then cited to support that statement. In point also is the case of *McDaniel* v. *Gulf Oil Corporation*, 204 S. C. 186, 28 S. E. 2d 815.

The case of *Magnolia Petroleum Company* v. *Johnson, supra,* in dealing with this same question, had a factual situation very similar to the one here, as shown by reference to page 555 of the Arkansas Reports. In that case there was a jury trial and the Petroleum Company

insisted that the undisputed evidence showed the relationship of an independent contractor. In affirming the case the court said:

"And the majority are of the opinion that the contract between the company and Smith, as interpreted by the conduct of the parties under it, shows that it was the purpose of the company to retain complete control of everything done in connection with the sale and delivery of the oil, and that the testimony, in its entirety, warranted the finding that the drivers of the wagon were themselves the servants of the company."

It follows from what we have said that the decree of the trial court should be and it is hereby reversed, with directions to overrule appellee's motion to quash service.