PHILLIPS COOPERATIVE GIN Co. *v.* TOLL.

5-1481                                           311 S. W. 2d 171

Opinion delivered March 17, 1958.

*Wood & Smith,* for appellant.

*Thorp Thomas* and *Tom Gentry,* for appellee.

ED. F. MCFADDIN, Associate Justice. This appeal stems from a traffic mishap: a truck-trailer driven by W. T. Jackson collided with a car driven by Richard F. Toll, Sr., causing injuries which resulted in Mr. Toll's death. The appellees (administratrix and administrator of Toll's estate), as plaintiffs, obtained judgment against W. T. Jackson and also against the appellant, Phillips Cooperative Gin Company (hereinafter called "Gin Company"), as the employer of Jackson. The Gin Company has appealed; and on the record before us, only two points are designated for our review.

I. *Appellant's Request For Instructed Verdict.* At the conclusion of all the evidence the Gin Company moved for an instructed verdict in its favor; and the motion was overruled. The point we now consider is whether an instructed verdict should have been given. Viewing the evidence in the light most favorable to the appellees, as is our rule in cases like this one,[1] these facts appear:

The Phillips Cooperative Gin Company is located at or near Lexa in Phillips County, and C. H. Martin is the general manager of the gin. The Gin Company had accumulated a quantity of cotton seed, which it sold from time to time to various oil mills. On September 27, 1955, W. T. Jackson carried a load of cotton seed by truck-trailer from the Gin Company to the Southern Cotton Oil Mill in North Little Rock. After the seed had been delivered to the cotton oil mill, W. T. Jackson started back to his home; and on such return journey there occurred the traffic mishap which resulted in Mr. Toll's death. The Gin Company claimed that Jackson was an

---

[1] See *Black & White Cab Co.* v. *Doville,* 221 Ark. 66, 251 S. W. 2d 1005, and cases there listed.

independent contractor; and the plaintiffs — appellees — claimed that the relationship between the Gin Company and Jackson was that of master and servant. We are not concerned with any questions of negligence or amount of the verdict, but are considering what was the relationship between the Gin Company and Jackson at the time of the traffic mishap.

In *Olin Mathieson Chemical Corp.* v. *Shirey,* 226 Ark. 530, 291 S. W. 2d 250, we listed many of our cases on this matter of independent contractor v. master-servant relationship; and we said:

"The rule is well established that where fairminded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury. *St. L. I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786. It is also well established that it is proper to direct a verdict for the defendant only when, under the evidence and all reasonable inferences deducible therefrom the plaintiff is not — under the law — entitled to recover. *Wortz* v. *Ft. Smith Biscuit Co.,* 105 Ark. 526, 151 S. W. 691."

It must also be remembered that when it is shown that the person causing the injury was at the time rendering a service for the defendant and being paid for that service, and the facts presented are as consistent with the master-servant relationship as with the independent contractor relationship, then the burden is on the one asserting the independence of the contractor to show the true relationship of the parties. In *Warren* v. *Hale,* 203 Ark. 608, 158 S. W. 2d 51, we said:

"It is generally held by the courts, including our own, that if the employer claims that an employee is an independent contractor for whose acts he is not responsible, the burden is upon him to show that fact. It was so held in *St. L. I. M. & S. Ry. Co.* v. *Davenport,* 80 Ark. 244, 96 S. W. 994, . . . In *Dishman* v. *Whitney, et al.,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460, it was held that 'Where the facts presented are as consistent with the theory of agency as with that of independent con-

tractor, the burden is on the one asserting the independency of the contractor to show the true relation of the parties.' Many other cases might be cited to the same effect. See 27 Am. Jur., p. 538, § 59."

With all of the foregoing in mind, we come to the facts relied on by appellees to make a jury question on the issue of master-servant as opposed to independent contractor. We list some of the salient items:

1. The Gin Company sold a load of its cotton seed to the Southern Cotton Oil Mill. The cotton seed had to be delivered to the mill in North Little Rock. The Gin Company arranged with W. T. Jackson to transport the load of seed. On the way back to his home, Jackson had the traffic mishap here involved. The contract between the Gin Company and Jackson was entirely oral.

2. Jackson loaded the seed onto the truck-trailer at the gin at the place directed, but the load was never weighed until it reached the Southern Cotton Oil Mill. It was then for the first time ascertained how many tons of seed Jackson had loaded on the truck-trailer.

3. There is no evidence in the record that anyone except Jackson ever transported the seed of the Gin Company to any destination in the times here involved.

4. The Gin Company claimed that the purchaser of the seed (Southern Cotton Oil Mill, in this case) was to pay Jackson for transporting the seed, and that the amount Jackson was to receive was $4.20 per ton. The particular load here involved was on September 27, 1955; and the record here shows that as late as October 5, 1955 the Southern Cotton Oil Mill addressed an inquiry to C. H. Martin (manager of the Gin Company) listing this load of seed by invoice number, pounds, rate for hauling, and gross amount, and showed the hauling item to be $65.66; and the Southern Cotton Oil Mill asked Martin in the inquiry of October 5th: "This freight has not been paid to anyone. Advise how you want it handled." Along with the load of September 27th there was another load of September 26th, on which the hauling amounted to $71.74; so the total of these two loads was

$137.40. The September 27th load was the load that Jackson had just hauled when he was returning home. The check of the Southern Cotton Oil Mill for $137.40 for hauling was made out to C. H. Martin, dated October 5, 1955, and bore the notation: "W. T. Jackson Trucking." The check was endorsed by C. H. Martin and the Phillips Cooperative Gin Company; so the check never went through the possession of W. T. Jackson.

5. In explanation as to the inquiry made by the oil mill and as to why the check was made as it was, the appellant's witnesses explained that the Gin Company had the custom of advancing money to Jackson and being repaid by collecting the amounts due Jackson from the various oil mills to which he had hauled seed from the Gin Company.

6. C. J. Jackson, the father of W. T. Jackson (the man here involved) is the president of the Board of Directors of the Gin Company. C. J. Jackson testified that he had no interest whatever in either the truck or the trailer used by W. T. Jackson; but it was nevertheless established that the trailer was registered and licensed in the name of C. J. Jackson.

7. W. T. Jackson testified that he did hauling[2] "for the public"; that on September 26th, C. H. Martin, general manager of the Gin Company, told him to take a load of seed to the Southern Cotton Oil Mill in North Little Rock; that Jackson loaded the seed on the truck-trailer that night; that he began the trip to North Little Rock "about daylight on September 27th"; that he delivered the load of cotton seed to the Southern Cotton Oil Mill; and "the Southern Cotton Oil Mill paid me for the hauling. The checks were made out to me." The photostatic copy of the checks in the record show that the checks were made out to C. H. Martin and that he endorsed the checks and passed them through the account

---

[2] W. T. Jackson was not shown to have any permit from the Public Service Commission. It was stated in the oral argument by appellant —and not denied by appellees — that W. T. Jackson came under some exemption clause of the law and was, therefore, not required to have a permit from the Public Service Commission.

of the Gin Company, as stated in paragraph numbered 4, *supra.*

8. A sharply disputed issue in the trial was the amount, if any, of control that the Gin Company retained over Jackson. Robert Dodd, who worked for Jackson on the truck-trailer, testified on cross-examination:

"Q. Have you been present when the manager of Phillips Gin, Phillips Cooperative Gin Company, would give W. T. Jackson instruction about where to haul the stuff?

A. Sometimes I would, sometimes I wouldn't.

Q. Would they instruct him to take a load to such and such and come back and take a load to such and such a place, do you remember anything about that?

A. No, sir, I don't remember that. Anywhere they would tell him to carry a load he would carry it.

Q. They gave him instructions and directions?

A. Yes, sir."

9. The Gin Company manager admitted there was no written contract with Jackson; but if the Gin Company should stop him with a load of seed enroute to Little Rock, and direct him to go instead to Helena, and if Jackson failed to obey the revised directions, then he would not be allowed to haul any more seed for the Gin Company.

The foregoing numbered paragraphs fairly reflect the evidence on the matter of independent contractor as opposed to master-servant. Two of our more recent cases on this are *Barr* v. *Matlock,* 222 Ark. 260, 258 S. W. 2d 540; and *Olin Mathieson Chem. Corp.* v. *Shirey,* 226 Ark. 530, 291 S. W. 2d 250; and in each of these cases we held — as we hold here — that the evidence offered by the plaintiffs showed facts as consistent with the theory of master-servant as with that of independent contractor; and that before the party asserting independent contractor relationship would be entitled to an

instructed verdict, the evidence on the issue must present no factual question.

We conclude that all of the evidence reflected by the foregoing numbered paragraphs made a case from which reasonable men might draw the inference that Jackson was in fact the servant of the Gin Company rather than an independent contractor. So we find no error in the refusal of the trial court to grant an instructed verdict for the defendant Gin Company.

II. *Appellees' Instruction No. 5.* We conclude that the giving of this instruction — later to be copied — constituted reversible error. In a series of instructions, not here challenged, the Court told the jury:

"Plaintiff contends that W. T. Jackson, at the time of the collision giving rise to this litigation, was an agent, servant or employee of Phillips Cooperative Gin Company and was acting in the scope of his employment. Phillips Cooperative Gin Company denies that W. T. Jackson was its agent, servant, or employee and contends that he was an independent contractor.

"An independent contractor is one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it and represents the will of the company only as to the result of his work.

"Even though an employer's control and direction over a contractor be retained the relation of master and servant is not thereby created unless such control and direction relate to the contractor's physical conduct in performing the work with respect to the details thereof.

"A servant is a person subject to the command of his master as to the manner in which he shall do his work. The relation of master and servant exists only where the master can order the work and direct how it shall be done. When the person to do the work may do it as he pleases then such person is not a servant.

"If you find that W. T. Jackson at the time of the collision was not an agent, servant, or employee of Phil-

lips Cooperative Gin Company but was an independent contractor as defined in these instructions, you will find in favor of Phillips Cooperative Gin Company.''

In the foregoing instructions the jury was given. a definite set of rules by which to determine the relationship of W. T. Jackson and the Gin Company. But the appellees asked, and the Court gave, over appellant's general and specific objections,[3] the appellees' Instruction No. 5 here challenged. This instruction reads:

''In determining whether W. T. Jackson was an agent, servant, or employee of the Phillips Cooperative Gin Co., you should determine from all the evidence in the case in whose business W. T. Jackson was engaged and who had the right to control and direct his conduct, and if you find from a preponderance of the evidence that *W. T. Jackson was engaged in the business of Phillips Cooperative Gin Co. and that Phillips Cooperative Gin Co. had the right to control and direct his conduct,* at the time of the collision, *then you will find* that W. T. Jackson was an agent, servant or employee of Phillips Cooperative Gin Co. regardless of whether or not he was selected or paid by Phillips Cooperative Gin Co.'' (Italics our own.)

This Instruction No. 5 added confusion rather than enlightenment. It was a *binding* instruction in that it told the jury that if two points were found, then the jury would find for the plaintiff. We have repeatedly held that when a binding instruction is given, then it must incorporate all of the essential conditions in the case. See *Reynolds* v. *Ashabranner,* 212 Ark. 718, 207 S. W. 2d 304, and cases there cited.[4]

---

[3] The appellant's objections to the instruction are as follows: "To which said instruction defendant Phillips Cooperative Gin Company objected generally, and specifically because it fails to consider that W. T. Jackson had or would have terminated any supposed employment; it is misleading because it assumes that someone had a right to control W. T. Jackson when he was or could have been an independent contractor engaged in his own business; it fails to define scope of employment; and the final phrase, 'regardless of whether or not he was selected or paid by Phillips Cooperative Gin Company' is an incorrect statement of law as used in connection with master and servant, and amounts to a comment on the evidence by emphasizing certain factors."

[4] In *Hearn* v. *East Texas Motor Freight Lines,* 219 Ark. 297, 241 S. W. 2d 259, we held that the proximity and arrangement of the instruc-

The instruction undertakes to draw the line between the independent contractor relationship on the one side and the master-servant relationship on the other side, and then tells the jury that in deciding on which side of the line Jackson and the Gin Company were the jury would consider only two conditions: (1) in whose business Jackson was engaged; and (2) whom had the right to control and direct his conduct. There are other conditions which should not have been ruled out in the instruction; and one of these is the right to terminate the employment. In a number of cases we have held that the right to terminate the employment at any time is of considerable weight on the question of determining whether the worker is an independent contractor or a servant.

In *Wright* v. *McDaniel,* 203 Ark. 992, 159 S. W. 2d 737, we said: " 'The fact that the employer may at any time terminate the performance of the work by discharging the employee is of considerable weight as tending to show that the employee is not an independent contractor. *Bristol & Gale Co.* v. *Industrial Comm.,* 292 Ill. 16, 126 N. E. 599'; 31 C. J. 475." In *Hollingsworth & Frazier* v. *Barnett,* 226 Ark. 54, 287 S. W. 2d 888, we said: "The power of an employer to terminate the employment at any time without liability is incompatible with the full control of the work which is usually enjoyed by an independent contractor and is a strong circumstance tending to show the subserviency of the workman."

Other cases to the same effect could be cited; but the point is, that the issue of the right of termination of employment was *entirely* omitted from this binding instruction. The conclusion as to what was the relationship (independent contractor v. master-servant) must be drawn by the jury from all of the circumstances and proof (*Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W. 2d 411). In Topic I, *supra,* in discussing the refusal of

tions might be considered when one essential element — contributory negligence in that case — did not appear in the binding instruction. But the holding in the Hearn case finds no application in the case at bar because, here, all of the instructions were not designated for the record that is before us. The designations only contained the appellees' Instruction No. 5 and the instructions asked by the Gin Company; so we cannot determine the matter of proximity and arrangement.

the Court to give an instructed verdict, we emphasized that all of the circumstances there mentioned — added together—made a question of fact for the jury. It would be a mistake for the Court to single out only two factors and give a binding instruction on those two factors alone; yet such was the effect of appellees' Instruction No. 5.

Not only was this instruction binding, but it was argumentative, and also was a comment on the weight of the evidence, in that it said: ". . . regardless of whether or not he was selected or paid by Phillips Cooperative Gin Company." The instruction also amounted to a comment on the weight of the evidence and was prejudicial because it assumed that *someone* other than W. T. Jackson had a right to control his actions. The words of the instruction, ". . . in whose business W. T. Jackson was engaged . . .", seemed to clearly imply that he was not engaged in business for himself: at least it is quite possible that the jury could have so construed the language. The instruction contained other defects; but what we have said is sufficient to demonstrate that the instruction was erroneous, and that the judgment must be reversed for the error in giving the Instruction No. 5.

The final conclusion reached in this case is the composite result of a variety of views on the two points decided. Justices MILLWEE, WARD, ROBINSON, and McFADDIN compose the majority on the first point decided (i. e. that the Trial Court was correct in refusing to give the Gin Company's request for an instructed verdict). The Chief Justice and Justices HOLT, WARD, and McFADDIN compose the majority on the second point decided (i. e. that the Court erred in giving appellees' Instruction No. 5).

Reversed and remanded.

MILLWEE and ROBINSON, JJ., dissent.

SAM ROBINSON, Associate Justice, dissenting. I cannot agree that Instruction No. 5 requested by appellees is erroneous. In fact, I can see no valid distinction between that instruction and appellant's Instruction No. 4. Ap-

pellees' Instruction No. 5 merely told the jury that if they should find that W. T. Jackson was engaged in work of the Gin Company and that the Gin Company had the right to control and direct his conduct at the time of the collision, then in law Jackson was agent for the Gin Company. Instruction No. 4 given on behalf of appellant in effect told the jury the same thing. This instruction reads: "A servant is a person subject to the command of his master as to the manner in which he shall do his work. The relation of master and servant exists only where the master can order the work and direct how it shall be done. When the person to do the work may do it as he pleases then such person is not a servant."

It appears to me that the meaning of the two instructions is the same and appellant is in no position to complain of the court's giving an instruction on behalf of the appellees when an instruction carrying the same meaning was given on behalf of appellant.

The majority opinion states that elements other than those mentioned in Instruction No. 5 are involved in this case in the relationship of master and servant, and that one of the elements omitted from the instruction is the right to terminate the employment. The fact that the employer may or may not terminate the employment at will may shed some light on the nature of the employment. Still, such right is not a distinguishing feature between an agent and an independent contractor. The right to terminate the employment at will may not exist, and yet the relationship could be that of master and servant. On the other hand, the contract of employment may not be cancellable at will and yet the relationship be that of independent contractor. In my opinion the cases cited by the majority do not sustain the view that the right to terminate the employment is one of the elements of a master and servant relationship. *Wright* v. *McDaniel*, 203 Ark. 992, 159 S. W. 2d 737, merely states that the right to terminate the employment is evidence that it may be considered in arriving at a conclusion of whether the relationship is that of agency or independent contractor, and the same thing is true of *Hollingsworth & Frazier* v. *Barnett*, 226 Ark. 54, 287 S. W. 2d 888.

If the Phillips Gin Company had the right to control and direct the action of Jackson, the driver of the truck, at the time of the collision, then without a doubt Jackson was the Gin Company's agent in driving the truck, and this is what the jury were told. In *Olin Mathieson Chemical Corp.* v. *Shirey*, 226 Ark. 530, 291 S. W. 2d 250, the right to direct and control the driver was the element considered in determining whether agency existed. In the case at bar the majority has pointed to no other element that should be considered except the right to terminate the contract of employment, and in my opinion this is not one of the elements of agency, but merely evidence of the relationship. The trial court instructs the jury on the law and not on the evidence.

According to the undisputed evidence in the case, the driver of the truck was employed by the Gin Company to move seed for the Company, and when the accident occurred he was on the return journey after delivering the seed as directed by the Company. There is only one issue: Was Jackson an independent contractor, or was he an agent of the Gin Company? This Court is holding that the evidence was sufficient to take the case to the jury on the question of agency. It was up to the trial court to instruct the jury as to just what facts would constitute agency in the circumstances of this case, and by Instruction No. 5 the court told the jury that if the Gin Company had the right to control and direct the conduct of the driver of the truck at the time the collision occurred, then the driver would be, according to law, the agent of the Gin Company. This was a correct statement of the law, and it is hard to understand just how the court could have informed the jury on this point of law in any clearer terms.

In *Ark. Independent Oil Marketers Assn., Inc.* v. *Monsanto Chemical Co.*, 225 Ark. 620, 625, 284 S. W. 2d 127, there was the issue whether one Yates was the agent of the Lion Oil Company. It was held that he was the agent of the company and the case turned on the fact that the company had the right to direct and control his actions. The Court quoted from 116 A. L. R. 462, as follows: " ' * * * and in the majority of such cases it has been held that such operator is a "servant" or "employee" of the oil com-

pany, rather than an "independent contractor" as is commonly contended by the company, generally on the theory that although the terms of the written contract might indicate that the operator had the status of an "independent contractor," the company in actual practice retained such power to subject him and his employees to its will and direction that he was in fact a "servant," "employee," or "agent," * * *,''

And the Court quoted from *Magnolia Petroleum Co.* v. *Johnson,* 149 Ark. 553, 233 S. W. 680, as follows [225 Ark. 626]: " 'And the majority are of the opinion that the contract between the company and Smith, as interpreted by the conduct of the parties under it, shows that it was the purpose of the company to retain complete control of everything done in connection with the sale and delivery of the oil, and that the testimony, in its entirety, warranted the finding that the drivers of the wagon were themselves the servants of the company.' "

The wording of Instruction No. 5 simply means that if the Gin Company had the right to direct the driver of the truck as to the road to travel, the speed at which the truck should be driven, the caution which should be exercised, and other details pertaining to operation of the truck, then the driver of the truck was the agent of the Gin Company. True, the instruction does not point out all possible actions of the driver, but the words "the right to control and direct his conduct" include such details. I have found no case sustaining the contention that Instruction No. 5 is erroneous, and none is cited by the majority. Surely the jury cannot be left to make its own rules as to just what set of circumstances will constitute the relationship of principal and agent. Certainly in the case at bar the jury had to be informed as to the distinction in law as between an agent and an independent contractor. In many cases the distinction is finely drawn, and no rule can be laid down which will fit every case, but here it is undisputed that the Gin Company employed Jackson, the driver of the truck, and the only question is: Did the Company have the right to control and direct his conduct at the time of the collision? If so, then Jackson was an agent, and that is what the court told the jury.

In *Moore and Chicago Mill & Lbr. Co.* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722, in discussing the distinction between an agent and an independent contractor, the Court said: " * * * The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. * * *" That is exactly the situation we have here. If the Gin Company had the right to direct and control the conduct of the driver at the time of the collision, then it necessarily follows that the relationship of master and servant existed, and that is what the court told the jury.

Neither do I think Instruction No. 5 was argumentative or a comment on the weight of the evidence.

For the reasons set out herein, I respectfully dissent.

Mr. Justice MILLWEE joins in this dissent.