BARR *v.* MATLOCK.

5-22                                            258 S. W. 2d 540

Opinion delivered June 1, 1953.

Rehearing denied June 29, 1953.

*Pat Robinson* and *Graves & Graves,* for appellant.

*Bernard Whetstone,* for appellee.

ED. F. McFADDIN, Justice. This appeal stems from a traffic mishap, which occurred when a car in which appellee, Mrs. Matlock, was riding was involved in a collision with a gravel truck driven by Morton, claimed to be the servant of the defendants, Lambert and Barr, the appellants here. We will refer to the parties as they were styled in the Trial Court.

The defendants, Lambert and Barr, were under contract to have gravel transported from a point north of

Lewisville, in Lafayette County, to an oil field west of Lewisville. The trucks, loaded with gravel, traveled West on U. S. Highway 82, and then turned off the highway into a dirt road which led to the oil field. The collision occurred when one of the gravel trucks attempted to make the left turn, and collided with the car in which Mrs. Matlock was riding as a passenger. The Jury awarded Mrs. Matlock $10,000 damages, and awarded Mr. Matlock $2,500 for his wife's medical bills and for loss of services of his wife. The defendants have appealed, urging reversal on the grounds now to be discussed:

I. *Independent Contractor*. The defendants claim that they were entitled to an instructed verdict on the theory that there is no evidence that Morton, the driver of the gravel truck, was the servant or agent of the defendants, Lambert and Barr.

The evidence showed that Lambert and Barr purchased the gravel in the pit and had their own equipment, foreman and employees loading the ten or twelve trucks engaged in hauling the gravel; that when the trucks reached the oil field, Lambert and Barr's men directed the truck drivers when and how to dump and spread the gravel; that the truck in question was owned by Johnny Atkins and driven by Curtis Morton; that Atkins paid Morton by the day for driving the truck, and that Lambert and Barr paid Atkins by the yard-mile for the gravel hauled. Thus, it was the defendants' contention that Atkins was an independent contractor engaged in hauling the gravel, and that Morton was the servant of Atkins.

On the other hand, it was testified that Atkins told Morton to do whatever Lambert and Barr instructed; that if Morton had not obeyed Lambert and Barr's instructions, he would have been sent off the job; and that Morton was subject to Lambert and Barr's orders. The foreman of Lambert and Barr testified that he could have sent the Atkins truck off the job if he so desired. One of the tests used to determine whether the relationship, in a case such as this, is master-servant or independent contractor is the control of the workman, the right to direct his work, and the right to discharge him from the work.

In *Hobbs-Western Co.* v. *Carmical,* 192 Ark. 59, 91 S. W. 2d 605, we quoted from earlier cases:

" 'The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.' "

In *Delamar & Allison* v. *Ward,* 184 Ark. 82, 41 S. W. 2d 760, the factual situation was, in salient essentials, similar to that in the case at bar; and we there said:

"Delamar & Allison testified that they did not in any case employ the driver of any truck, and that these drivers were employed and paid by the truck owners, and that they had no control over any of the drivers and were not concerned as to the manner in which they did their work, and were interested only in the result thereof. But this was the principal question of fact in the case, and we think the testimony was sufficient to support the finding that Delamar & Allison employed the trucks, and none were engaged except those employed by them, and the right to discharge necessarily implied, and that they had the right to direct and control the drivers of the trucks and had exercised that authority, although but few directions were required.

"We conclude therefore that the testimony warranted the finding that there were not three hundred independent contractors engaged in hauling the gravel, but that all the drivers were employees of Delamar & Allison, and that the relation of master and servant existed between Westmoreland and the other truck drivers and Delamar & Allison. *Ellis & Lewis* v. *Warner,* 180 Ark. 53, 20 S. W. 2d 320; and *Ellis & Lewis* v. *Warner,* 182 Ark. 613, 32 S. W. 2d 167."

In *Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W. 2d 411, we said:

"The conclusion as to the relationship must be drawn from all the circumstances in proof, and, where there is any substantial evidence tending to show that the right of control over the manner of doing the work was re-

served, it became a question for the jury whether or not the relation was that of master and servant. *Magnolia Petroleum Co.* v. *Johnson*, 149 Ark. 553, 233 S. W. 680; *Harkins* v. *National Handle Co.*, 159 Ark. 15, 250 S. W. 900.''

We therefore conclude that the Trial Court was correct in submitting the independent contractor question to the Jury.

II. *Negligence.* The defendants also claim that they were entitled to an instructed verdict on the theory that there was no proof of any negligence done or suffered by the driver of the gravel truck. But on this point, just as on the preceding one, a question was made for the Jury. Mrs. Matlock was riding in a car being driven by Mr. Flournoy, who was driving west on U. S. Highway 82 from Lewisville to Texarkana. Flournoy was behind the Morton gravel truck and gave a horn signal, and was in the act of passing the truck, when Morton turned to the left to leave the highway to the oil field road, and ran his truck into the right side of the Flournoy car. Witnesses for the plaintiff testified that Flournoy gave the horn signal, indicating his intention to pass the truck; that Morton *gave no signal of any kind* and turned to the left without slackening his speed. The foregoing evidence, even though strongly denied by the defendants, was sufficient to take the case to the Jury under § 75-618, Ark. Stats., and the cases of *Mo. Pac. Trans. Co.* v. *Sacker*, 200 Ark. 92, 138 S. W. 2d 371, and *Barboro & Co.* v. *James*, 205 Ark. 52, 168 S. W. 2d 202.

III. *Instructions.* Another question on this appeal is the language found in Paragraph 4 of instruction No. V.[1] In Paragraphs 2 and 3 of said instruction No. V, the

---

[1] The entire Instruction No. V, with the paragraphs duly numbered, is as follows:

"Instruction No. V.

"1. If you find from a preponderance of the evidence that Morton, the driver of the truck, was a servant of Lambert & Barr, then you are told that in passing upon the question of whether or not he was negligent, you may take into consideration the following:

"2. The laws of the State of Arkansas provide:

'No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner

Court instructed the Jury in the language of Section 75-618 Ark. Stats., and then continued in paragraph 4 of the same instruction with this language:

"The signals herein required by the Laws of Arkansas shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the State Highway Commission, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle, *and the distance from the center of the steering wheel to the outer edge of the truck exceeded 24 inches,* then the said signal must be given by such a lamp or device. In the event the signal is given by hand and arm, the signal for a left turn is the horizontal extension of the hand and arm." (Italics our own.)

It will be observed (a) that paragraph 4 embodies verbatim all of § 75-619, Ark. Stats., as found in the 1947 Permanent Volume, unaffected by Act No. 151 of 1951; and (b) that the italicized language in paragraph 4 of the instruction, while not the full text of Act No. 151 of 1951, is nevertheless garnered from the 1951 Act, which used the 24-inch figure, just as in the italicized language. This Act No. 151 of 1951 was held unconstitutional in

hereinafter provided in the event any other vehicle may be affected by any such movement.'

"3. The law further provides: 'A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet travelled by the vehicle before turning.'

"4. The signals herein required by the Laws of Arkansas shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the State Highway Commission, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle, *and the distance from the center of the steering wheel to the outer edge of the truck exceeded 24 inches,* then the said signal must be given by such lamp or device. In the event the signal is given by hand and arm, the signal for a left turn is the horizontal extension of the hand and arm.

"5. So, you are instructed that if you find from a preponderance of the evidence that the driver of the truck, Morton, was a servant of the defendant, Lambert & Barr, and that he violated any or all of the above provisions of the law, then you are instructed that this is evidence of negligence which you may take into consideration in arriving at a determination as to whether or not the driver, Morton, was negligent."

the case of *State* v. *Bryant,* 219 Ark. 313, 241 S. W. 2d 473.[2]

Defendants claim that the italicized language in paragraph 4 clearly shows that the instruction was based on said Act No. 151; and so defendants insist that the instruction was erroneous and that the cause must be reversed. The defendants objected generally to the instruction; and then objected specially on two points not germane to the present argument:[3] so, with only a general objection for foundation, the defendants are now urging that the judgment should be reversed because of the italicized language in paragraph 4 of the instruction.

The addition of the italicized language—"and the distance from the center of the steering wheel to the outer edge of the truck exceeded 24 inches"—really made the instruction more favorable to the defendants than the instruction would have been without such italicized language. In the paragraph 4, the Jury was told that one driving a truck was required to use a signal device when two conditions concurred: (a) when ". . . a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle . . ."; *AND* (b) when ". . . the distance from the center of the steering wheel to the outer edge of the truck exceeded 24 inches." These two conditions were joined by the conjunctive *"AND"*; and thus the Court told the Jury that a signal device would only be required when *both* conditions concurred. The adding of the condition (b)—and that was the italicized language in

---

[2] *State* v. *Bryant* was decided July 9, 1951; and the present case was tried on April 28, 1952. It is only fair to the Trial Court to state that nowhere in the transcript of this case is there any reference to the case of *State* v. *Bryant.*

[3] The only objection that the defendants made to this instruction is as follows:

"The defendants object generally to the giving of Court's Instruction No. V and object specifically to the giving of said instruction for the reason that this instruction fails to take into consideration the superior right of the road of the front car, in this instance driven by Curtis Morton, and also for the reason that the instruction states that the violation of the traffic statutes is evidence of negligence when in fact it is only evidence the jury may consider along with the other evidence in the case in determining whether or not the driver was negligent."

paragraph 4—made the instruction more favorable to the defendants than the law required; and a party cannot complain of an instruction more favorable to him than is justified.[4]

*Conclusion.* We have examined the other assignments urged by the defendants and find none to possess merit.

Affirmed.

GRIFFIN SMITH, C. J., dissents.

---

[4] *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458, 92 S. W. 249, and other cases collected in West's Ark. Digest, "Appeal and Error," Key No. 1033 (5).