MARVIN CLARK, GUARDIAN OF THE ESTATE OF THOMAS
HARVEY CAGE, A MINOR *v.* ARKANSAS DEMOCRAT COMPANY

5-4110                                   413 S. W. 2d 629

Opinion delivered March 13, 1967
[Rehearing denied May 1, 1967.]

*Ben. D. Lindsey* and *Spencer & Spencer* by *Don Gillaspie,* for appellant.

*Robert C. Compton* and *Austin McCaskill* for appellee.

LYLE BROWN, Justice. This appeal involves an action for personal injuries to Tommy Cage, age thirteen years, who was injured while working his newspaper route on a motor scooter in El Dorado. Tommy's guardian brings this appeal from a jury verdict in favor of the defendant, Arkansas Democrat Company. The appeal questions the propriety of an instruction which told the jury that the Democrat had the legal right to contract with Tommy Cage, notwithstanding he was under fourteen years of age. Tommy, with the approval of his parents, had executed a written agreement with Arkansas Democrat Company.

The instruction questioned by Tommy's guardian on appeal, given at the request of the Democrat, is as follows:

"Court's Instruction No. 8: You are also instructed that the Arkansas Democrat Company had the legal right to contract with Tommy Cage for the distribution of newspapers as an independent contractor even though it should be determined that he was under fourteen years of age."

The Democrat responds to the attack on this instruction by asserting that Act No. 96, March 21, 1883, § 2 (Ark, Stat. Ann. § 51-504 [1947]), authorized them to contract with the minor. The pertinent part of this section says that the contract of a minor, when approved by the parent having control of the minor, shall be binding. Cases coming to this court in which provisions of Act No. 96 have been applied have been concerned with sharecropping contracts.

We have no hesitancy in holding that such part of Act No. 96 as deals with minors under fourteen years of age has been superseded by Initiative Act No. 1, of 1914. See Ark. Stat. Ann. § 81-701 (Repl. 1960), which reads as follows:

"No child under the age of fourteen [14] shall be employed or permitted to work in any remunerative occupation in this State, except that during school vacation children under fourteen [14] years may be employed by their parents or guardians in occupations owned or controlled by them."

Initiative Act No. 1 repeals "all acts or parts of acts inconsistent with any of the provisions of this Act ..."

As they relate to minors under fourteen years of age, the two Acts are inconsistent and the repealing clause speaks for itself.

The Democrat next asserts that Ark. Stat. Ann. § 81-701 does not apply in this case. This contention is grounded on the theory that the statute does not prevent a child under fourteen years from operating his own business. In other words, the Democrat contends this minor was an independent contractor and that his contract is not void but merely voidable.

Even if the boy were placed in that classification, the Democrat has contracted with him to work in a remunerative occupation. This is prohibited by the statute and Court's Instruction No. 8 is therefore an incorrect statement of the law. Vacation employment under control of the parent excepted, we hold that the type of contractual arrangement herein utilized—whereby a child under fourteen years is employed or permitted to work in a remunerative occupation—violates the letter, the spirit, and the clear purposes of Initiative Act No. 1 of 1914. The purpose of the Act was set forth in *Terry Dairy Co.* v. *Nalley*, 146 Ark. 448, 225 S. W. 887 (1920):

"The object of the statute was to prevent boys under fourteen years of age from obtaining employment of any kind. Doubtless the Legislature had in view that boys under that age might seek employment of the kind in question in which they would

be subject to dangers in driving about the streets and delivering goods which their immaturity could not guard against. The danger of the delivery wagon driven by the boy coming into collision with other vehicles and street cars was ever present while he was delivering goods; ..."

Here it should be pointed out that the right of the State to deny the parent the authority to bind a child of tender years to a labor contract—as did Act 96 of 1883—is unquestioned. In the *Terry Dairy Company* case, our court quoted from Tiedeman on State and Federal Control of Persons and Property, as follows:

"So far as such regulations control and limit the powers of minors to contract for labor, there has never been, and never can be, any question as to their constitutionality. Minors are the wards of the the nation, and even the control of them by parents is subject to the unlimited supervisory control of the State."

Our court gave Initiative Act No. 1 a liberal construction in *Cox Cash Stores, Inc.* v. *Allen,* 167 Ark. 364, 268 S. W. 361 (1925):

"To carry out the beneficent purposes of the Legislature, child labor acts should be given such broad and liberal meaning as can be read therefrom as to mitigate the evils or prevent the mischiefs which they are intended to obviate. In pursuance of its plan in the matter, the Legislature provided that no child under the age of fourteen shall be employed in any remunerative occupation, except that, during school vacation, they may be employed by their parents or guardians in occupations owned by them."

Under the Democrat's so-called "independent contract," work was made available to this child which involved delivering three newspaper routes on a motor

scooter in the city of El Dorado. He was also called upon by the Democrat to solicit insurance, and canvass for new customers at night. It would indeed be a most narrow construction to deny the boy the protection given him by the Child Labor Act of 1914 on the ground that he and his parents had contracted away that protection. Here, it should be noted that the child has no coverage under our Workmen's Compensation Act, Ark. Stat. Ann. § 81-1302 (c) (1) (Repl. 1960).

Appellee argues that our Child Labor Act, passed in 1914, never contemplated the situation now before us; that at that time children were being exploited by employing them at low wages in occupations detrimental to their health, education, morality, and general welfare. In support of this argument, appellee cites the *Cox* case. That same case holds that another end to be accomplished by the Act was to prevent the injury and maiming of children in hazardous occupations. The Act may not have been important to the protection of newsboys in 1914, but in 1967 it should be considered very important. A plat of young Cage's newspaper routes reveals that he served a well populated area of El Dorado. In his area of service appear State Highway 15, Main Street, Warner Brown Hospital, the Youth Center, El Dorado-to-Camden Highway, Union Memorial Hospital, and numerous residential streets. Because of heavy vehicular traffic and his use of a motor scooter, it would be absurd to say that injury to this child should not have been reasonably anticipated.

Under the holding in *Terry Dairy*, and reiterated in *Cox*, this case should be reversed, with directions to the trial court to ascertain the damages. It was held in the *Cox* case that when the undisputed evidence shows the child to have been injured in the course of his employment, the trial court takes the question of proximate cause from the jury. The only other element necessary to complete the chain of proximate cause is that some injury should have been reasonably anticipated from hiring the child contrary to the provisions of the

statute; this element is established by the law itself. In the case at hand, it was undisputed that Thomas Harvey Cage was thirteen years of age, that he was injured at a time when he was delivering newspapers for the Democrat and under a relationship created by the Democrat whereby Cage was engaged in remunerative work.

Reversed.

HARRIS, C. J., and JONES, J., concur.

CARLETON HARRIS, Chief Justice, concurring. I concur with the majority in its holding that this case should be reversed, but I would reverse it solely on the basis that Tommy Cage was an employee of the Arkansas Democrat. I do not think it necessary in this case to reach the question of what constitutes, "permitting" a child to work. This is a broad term (and a broad holding) with more than one interpretation, and the majority holding today can extend much further than simply prohibiting a child less than 14 years old from selling newspapers. Likewise, I do not consider it essential to this decision to examine the question of whether an independent contract can be legally entered into between a publisher and a newsboy of this age, and not being vital, should not be passed upon.

As stated, in my view, based on the provisions of the Agreement between the Arkansas Democrat and Tommy, together with the acts of the parties established by the evidence, the boy was not an independent contractor, but was an employee of appellee, i.e., a master and servant relationship existed.

Let us look at some of the definitions and decisions with reference to the term "independent contractor." Volume 1, Bouvier's Law Dictionary (Third Revision), Page 1533, defines an independent contractor as:

"One who, exercising an independent employment contracts to do a piece of work according to his own

methods, and without being subject to the control of his employer, except as to the result of his work.

\* \* \*

"A still broader definition has been given as follows: 'Where a person is employed to perform a certain kind of work, \*\*\* the execution of which is left entirely to his discretion, without any restriction as to its exercise, and no limitation as to the authority conferred in respect to the same, and no provision is especially made as to the time in which the work is to be done\*\*\*.'"

This court, in *Barr* v. *Matlock,* 222 Ark. 260, 258 S. W. 2d 540 said:

"\*\*\*One of the tests used to determine whether the relationship, in a case such as this, is master-servant or independent contractor is the control of the workman, the right to direct his work, and the right to discharge him from the work."

In *Hollingsworth* and *Fraizer* v. *Barnett,* 226 Ark. 54, 287 S. W. 2d 888, we stated:

"The power of an employer to terminate the employment at any time without liability is incompatible with the full control of the work which is usually enjoyed by an independent contractor and is a strong circumstance tending to show the subserviency of the workman.

"The fact that the employment contract was for no specified time and could be terminated at will by appellant without liability, and that he reserved the right to make suggestions as to how the work should be done, are indicative of the relationship of employer-employee between appellant and appellee."

With these rules and tests in mind, let us briefly examine the testimony in this case.

Tommy Cage testified that he was hired by Charles N. Gentry, District Adviser for District No. 1 (which

includes El Dorado) for the Arkansas Democrat. The boy testified that he was given specific delivery routes... he was directed to throw the papers in wax paper on rainy days...he could not take subscriptions on other routes, and if any subscriptions were taken on routes other than his own, the carrier boys of those routes would be credited with the subscriptions...Gentry would pick up the newsboys once or twice per month in the evening, and they would work two or three hours at obtaining new subscriptions...he (Tommy) received directions (or training) in selling accident and health insurance which was offered only to subscribers of the Democrat...he delivered papers to prepaid subscribers (those who paid directly to the Democrat office). The testimony of Tommy as to his activities as a paper boy was pretty well substantiated by Mr. Gentry.

V. M. Sorrells, Circulation Manager for the Arkansas Democrat, who signed the contract for appellee, testified that he was also resident agent for Continental Assurance Company, which was the company offering the health and accident insurance to Democrat subscribers, and he stated that appellee company received a small portion of the premiums paid for the insurance. Sorrells testified that the purpose in selling the policies was to hold readership, and they were sold only to subscribers.

Under the provisions of the contract itself, Tommy was required to give two weeks written notice of the time he desired to terminate the contract, and he agreed that he would diligently maintain delivery service until the date of termination. The publisher, however, was given the right to cancel the agreement "with or without cause, at any time and without previous notice." Furthermore, the written agreement recites that the distributor "will not distribute or sell either directly or indirectly, any other newspaper in the area in which he operates, during the period of this agreement *and during the period of three months immediately following*

*the termination thereof."* (Emphasis supplied.) This last, of course, is actually a restrictive covenant, being, in effect, an agreement not to compete with the Arkansas Democrat. The usual consideration for such a covenant is simply the employment of the individual. In *Bailey* v. *Kin* , 240 Ark. 245, 398, S. W. 2d 906, this court said:

"Appellant contends that there is no mutuality (of consideration), and the contract is thus void. He argues that, under the agreement, appellee did not have to employ Bailey for any particular length of time; appellee did not have to pay any specific amount of money; and could fire Bailey without cause. We do not agree with appellant's contention. Numerous cases support the enforceability of protection covenants where the consideration is based simply upon employment. (Citing cases)"

A study of the testimony relating to Tommy's activities, and the contract itself, under our holdings and recognized definitions of independent contractor, convinces me that a master-servant relationship existed between this boy and appellee. I would therefore, as stated at the outset, so hold, and reverse this case without considering the question of what constitutes "permitting" a child under 14 to engage in any employment for remuneration, nor would I pass on the question of whether a valid relationship of independent contractor could be established.

I am authorized to to state that Jones, J., joins in this concurrence.