The Honorable Bill Walters State Senator P.O. Box 280 Greenwood, AR 72936-0280
Dear Senator Walters:
I am writing in response to your request for my opinion on the following questions:
 1. Do Arkansas child-labor laws apply to juveniles who are court-ordered or court-referred into a Community Service Program?
 2. Are youths under the age of sixteen allowed to operate power-driven lawn equipment if they are part of a Community Service Program?
RESPONSE
With respect to your first question, in my opinion, the Arkansas child labor laws would apply to juveniles committed to a Community Service Program — i.e., in the custody of the Youth Services Division ("YSD") of the Department of Human Services — only if the children were engaged in non-agricultural labor for compensation. With respect to your second question, in my opinion the answer is yes.
DISCUSSION
Question One: Do Arkansas child-labor laws apply to juveniles who arecourt-ordered or court-referred into a Community Service Program?
Arkansas' child labor laws, A.C.A. § 11-6-101 et seq., have traditionally been liberally applied. The following is a typical expression of this attitude: "To carry out the beneficent purposes of the Legislature, child labor acts should be given such broad and liberal meaning as can be read therefrom as to mitigate the evils or prevent the mischiefs which they are intended to obviate." Clark v. Arkansas Democrat Company,242 Ark. 133, 136, 413 S.W.2d 629 (1967), quoting Cox Cash Stores, Inc.v. Allen, 167 Ark. 364, 368 (1925). In Cox, the Court further remarked:
 Child labor laws are the result of an enlightened public policy as declared by the lawmaking branches of the various States. In construing statutes of this sort, which are referable to the police power, and which are enacted to promote the common welfare, not only by fostering education and preventing immorality in young children, but preventing the injury and maiming of them in hazardous occupations, regard should be had to the end to be accomplished.
167 Ark. at 367-68. Hence in Cox the Court concluded that the activities proscribed under a predecessor child-labor statute were "absolutely prohibited" and "could not legally be done under any circumstances" by children under sixteen, "no matter what their physical or mental development might be." Id. at 368.
However, in liberally applying child-labor laws, one is nevertheless bound by the plain meaning of the statutory language. When interpreting this statute, or any statute, it is the duty of a court to construe a statute just as it reads, "giving the words their ordinary and usually accepted meaning in common language." Brimer v. Arkansas ContractorsLicensing Bd., 312 Ark. 401, 405, 849 S.W.2d 948 (1993).
A.C.A. § 11-6-106 provides:
 No child under sixteen (16) years shall be employed or permitted to work in any occupation dangerous to the life and limb, or injurious to the health and morals of the child, or in any saloon, resort, or bar where intoxicating liquors of any kind are sold or dispensed.
A.C.A. § 11-6-107 further provides in pertinent part: "(a) No child under sixteen (16) years shall be employed or permitted to work at any of the following occupations: . . . (5) In proximity to any hazardous or unguarded belt, machinery, or gearing."
The application of these statutes to your request raises several questions. First, would the activities you describe — namely, operating a gas-powered push mower, weed eater or blower — amount to exposure to "hazardous machinery" that is "dangerous to the life and limb"? Secondly, would the activities you describe amount to "employment" or work in an "occupation"?
In Blankenship v. W.E. Cox Sons, 204 Ark. 427, 435, 162 S.W.2d 918
(1942), the Supreme Court offered the following assessment of what might constitute dangerous machinery under the child labor laws:
 Taking into consideration the evil sought to be remedied," machinery," as used in the Act, must mean a more or less complex combination of mechanical parts operating in such manner as to fascinate or confound a person of tender years; and as to such contrivances it was the intent to prevent children from having access to them at a time and in circumstances when harm might conceivably result.
The determination of whether machinery is "hazardous" under this standard must obviously begin as a factual inquiry. Both common sense and, I suspect, data suggest that a power mower is considerably more dangerous than a blower; many of our nation's yards, after all, are unfortunately strewn each summer with the toes of juvenile mowers. In any event, pursuant to his authority under A.C.A. § 11-6-107(b)(1), the Director of the Department of Labor has mooted all debate about the relative hazards of power tools by flatly barring children under sixteen from "[o]ccupations which involve the operation or tending . . . of any power-driven machinery other than office machines."[1] Dept. of Labor Reg. 2.300(b)(2). Based on this regulation, it is my opinion that the power tools you have listed are hazardous as a matter of law when used by anyone under sixteen. Cf. Devin v. Jones, 426 P.2d 343 (Ok. 1967) (to declare rotary power mowers unreasonably dangerous for use by children "would require an unauthorized exercise of legislative power by the court and would not be in accord with accepted rules of statutory construction").
However, under the express provisions of A.C.A. § 11-6-106 and A.C.A. §11-6-107(a), the hazardous activities at issue would be proscribed only if the children performing them were "employed" in an "occupation." The term "employ" is defined in Dept. of Labor Reg. 2.100(5) as including "to suffer or permit to work." In my opinion, the hazardous activities at issue clearly qualify as "employment" under this definition.
However, in my opinion, the activities you describe cannot be classified as undertaken in the course of an "occupation." A.C.A. § 11-4-203 defines the term "occupation" as meaning "any occupation, service, trade business, industry, or branch or group of industries or employment or class of employment in which employees are gainfully employed." (Emphasis added.) Similarly, Black's Law Dictionary defines "occupation" as follows:
 That which principally takes up one's time, thought, and energies, especially, one's regular business or employment; also, whatever one follows as the means of making a livelihood. Particular business, profession, trade, or calling which engages individual's time and efforts; employment in which one regularly engages or vocation of his life.
The key in both definitions appears to be the concept of significant remuneration in consideration of the activities — a condition conspicuously absent in the unpaid activities performed by children in the YSD program.
I confess to feeling concern that the statutes appear to dictate that children working without compensation can engage in hazardous activities without benefit of the protections of the Arkansas child labor laws. One wonders whether the legislature actually intended to create such an exclusion. Any doubts on this issue might be fueled by various statutes that appear to suggest that child-labor protection extends to activities that fall well short of constituting a vocation or gainful employment. For instance, in defining an exception for "domestic labor" — i.e., for any "occasional, irregular, or incidental work related to and in or around private residences," A.C.A. § 11-6-115(a) — the legislature seems to be acknowledging that "occasional, irregular, or incidental work" would warrant protection but for the exemption. Moreover, the legislature has created what appears to be a distinct category of "remunerative occupation," barring children 14 and under from engaging in such activities except if employed by their parents or guardians. A.C.A. §11-6-104.[2] The creation of this separate category might be interpreted as meaning that one could engage in an "occupation," and hence fall within the ambit of the child-labor laws, without receiving remuneration.
The temptation is strong to clutch at such straws as support for opining that YSD participants would be subject to Arkansas child-labor laws even if they were not paid for their work. However, I regrettably cannot ignore the unambiguous statutory equation between an "occupation" and "gainful employment." Accordingly, it is my opinion that the Arkansas child-labor laws would not apply to participants in the work projects you have described in your request.
As in many other jurisdictions, under Arkansas law, violation of the child-labor laws is considered negligence per se. Carter v. Montgomery,
226 989, 993, 296 S.W.2d 442 (1956). Significantly, the case law reviewing determinations of negligence per se typically focuses strongly on whether the activity giving rise to the injury fits a statutory definition of "employment" or "occupation" that involves remuneration.See, e.g., Vincent v. Riggi Sons, Inc., 285 N.E.2d 689 (N.Y. 1972) (determining that lawn mowing was covered because it was paid for and it "was incidental to the business of building and selling houses"); Smithv. Uffelman, 509 S.W.2d 229 (Tenn.App. 1973) (Tennessee child-labor laws apply to trigger strict liability only if mowing was done for compensation). Occasionally, in order to trigger application of child-labor laws, courts will go out of their way to characterize an injury as occupational. See, e.g., Prince v. Massachusetts, 321 U.S. 158
(1944) (affirming as a matter of "local law" a state court's determination that a minor Jehovah's Witness had engaged in "work" and a "sale" in distributing the Watchtower on the street corner); Swift v.Wimberly, 370 S.W.2d 500 (Tenn.App. 1963) (determining that free go-cart rides were compensation to minor for making mechanical repairs). In accordance with such cases, one might in theory characterize as "compensation" for work performed the privilege of continuing in a program that I assume is more attractive than the penal alternatives. However, under the restrictive statutory definition of "occupation" quoted above, I do not think receipt of such "compensation" would trigger application of the child-labor laws. Any change in what I consider this harsh result should properly be made through legislation.
In summary, whether the child-labor laws apply to juveniles in a Community Service Program depends on the circumstances. Assuming children under 16 operate the machinery you have described for no compensation, I do not think the child-labor laws will apply. By contrast, if the children receive compensation, I think the child-labor laws will bar the activities at issue.
Question Two — Are youths under the age of sixteen allowed to operatepower-driven lawn equipment if they are part of a Community ServiceProgram?
The preceding section has established that, under Arkansas law, your question should be answered in the affirmative if the youths are not compensated for their work. Your request appears to assume, however, that only state law is implicated in reviewing the appropriateness of your proposed plan. I will not analyze in detail the appropriateness of this assumption,[3] since my advisory role is limited by statute to counseling legislators on the construction and application of state law. A.C.A. § 25-16-706. To determine the potential application of federal law on this issue, I advise you to contact either private counsel or the U.S. Department of Labor.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh
[1] The legislature has obliquely expressed similar misgivings about all power tools in carving out a domestic-labor exception to the child-labor laws. A.C.A. § 11-6-115(a) includes within the exempt category of "domestic labor" "manual yard work" "related to and in or around private residences." (Emphasis added.)
[2] Labor Department Regulation 2.100(8) defines "remunerative occupation" as "any occupation in which compensation for services is made, anticipated, or required by the FLSA [Fair Labor Standards Act] or Ark. Code Ann. 11-4-201 et seq."
[3] At first blush, it would appear that your assumption is probably correct. As you may know, in National League of Cities v. Usery,426 U.S. 833 ((1976), the Supreme Court struck various amendments extending the minimum wage and maximum hours provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., declaring that principles of federalism foreclosed the federal government from imposing on the states its choices as to the conduct of integral government functions. To the extent that incarceration is a traditional government function, federal child-labor laws might likewise be constitutionally inapplicable in this case. Moreover, with some exceptions that do not appear to apply to your request, the FLSA expressly excludes from the category of "oppressive child labor" work done by children under sixteen at the behest of "a person standing in place of a parent." 29 U.S.C. § 203(l). Assuming YSD and Comprehensive Youth Services fall within this category, it would appear the activities at issue would be permissible even if federal law applied.