KAPLAN *v.* SOLOMON
SOLOMON *v.* ABRAMS ET AL.
(Two Appeals in One Record)
[No. 17, October Term, 1953.]

132

*Decided November 5, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Theodore C. Waters, Jr.,* and *Benjamin C. Howard,* with whom were *Miles and Stockbridge,* on the brief, for Samuel Kaplan, appellant.

*Joseph H. A. Rogan,* with whom was *J. Francis Ford,* on the brief, for Marguerite Brown Solomon, appellee and appellant.

*Frederick J. Green, Jr.,* with whom was *James J. Lindsay,* on the brief, for Harry Abrams and Walter S. Little, appellees.

HENDERSON, J., delivered the opinion of the Court.

Mrs. Solomon, the plaintiff in this case, was injured on October 22, 1949, while a passenger in a Veteran taxicab owned and operated by Kaplan, which was in a three-way collision with a Diamond taxicab owned by Abrams and operated by Little, and an automobile owned and operated by Clarence Thomas. The Veteran cab was going east on Mulberry Street, a three-lane, one-way, east-bound boulevard. The Diamond cab came south on Mount Street, stopped, and made a left turn into Mulberry ahead of the Veteran cab. Both cabs then proceeded slowly along Mulberry Street in the north or left hand lane. The Diamond cab stopped in the middle of the block to discharge passengers and the Veteran cab stopped behind it. Thomas, going east on Mulberry behind the two cabs, crashed into the rear of the Veteran cab, and pushed it against the rear bumper of the Diamond cab. The severity of the impact by the Thomas car is indicated by the fact that his repair bill was over three hundred dollars. Mrs. Solomon was dislodged from the seat and injured her spine by striking her coccyx against a metal frame.

The court allowed the case to go to the jury as to all the defendants, refusing prayers for directed verdicts. The jury brought in a verdict for $5,000 as against all three defendants. Subsequently the court granted a motion for judgment N. O. V. as to Abrams and Little. Kaplan appealed from the judgment against him, Thomas did not appeal, and the plaintiff entered a cross-appeal from the judgment N. O. V. as to Abrams and Little. The only questions presented are as to the legal sufficiency of the evidence.

The cross-appeal is clearly without merit. The plaintiff admitted she did not see the cab ahead before the collision, and Thomas ultimately made the same admission. Kaplan testified that after the Diamond cab came in from Mount Street some distance ahead of him, he saw the driver slowing down and putting out

his hand to signal a stop. He also saw the stop lights come on, indicating that the brake was on. The Diamond cab proceeded slowly for about half a block after these signals were made, and Kaplan knew he was going to stop. Kaplan also gave a hand signal and depressed his foot brake to warn the vehicles behind. He stopped about a car length behind the Diamond cab, and had time to open the glove compartment and take out a cigarette before his cab was struck in the rear. He estimated the time his cab was stationary before the impact at from 13 to 18 seconds.

Little, the driver of the Diamond cab, testified that after making the turn from Mount Street he gave both a hand and the mechanical signal to indicate his intention to stop at the address given by his passengers in the middle of the block. He stopped slowly and saw the Veteran cab stop about 20 feet behind him. He was making change when the Veteran cab was driven against his rear bumper. The impact was very slight. His cab was stationary from 15 to 20 seconds before the impact. The passengers in his cab corroborated his story in every particular.

We find nothing in the testimony to support an inference of negligence on Little's part. Assuming, as we must, that there was nothing unlawful or improper in his stopping to discharge passengers in the middle of the block and in the lane next to the curb, there was no contradiction of the testimony that he made a slow stop after adequate warning of his intention. The cross-appellant argues that in turning in from Mount Street he should have waited for traffic to go by, but there is no evidence that Little failed to stop or yield the right of way at that point, or that this had anything to do with the accident in the middle of the block. The cross-appellant argues that since there was some evidence that Kaplan made a sudden stop, it could be inferred that Little did likewise, despite the testimony as to the time during which both cabs were stationary. But it does not follow that Little stopped suddenly, even

if Kaplan did. All of the testimony is definitely to the contrary.

Kaplan's appeal presents a more difficult question. It is conceded that Kaplan owed his passenger the highest degree of care consistent with his undertaking and that she could not be charged with contributory negligence under the circumstances. Of course, if the testimony of Kaplan is accepted, he was no more at fault than Little, and the sole cause of the accident was the failure of Thomas to observe Kaplan's signals. However, the plaintiff produced testimony as to the operation of Kaplan's cab that tended to contradict Kaplan's version, whereas there was no contradition as to the testimony concerning the Diamond cab. The plaintiff testified that Kaplan made a sudden stop. This, in itself, might be termed a mere characterization without probative force. *Cf. Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 145, 78 A. 2d 464, 467. But she testified that the nature of the stop was such that she was thrown forward and then back; "* * * at the same time something hit in the back and front and I went forward again and the seat came up on me and I got a pain in my back, * * * I went forward and backward and then I fell and I must have hit some kind of steel * * *." It is obvious that the injury was not due to the stopping but to the blow in the rear. Nevertheless, her testimony permits the inference that the brakes were not applied gradually, and that the blow in the rear followed immediately. The question we must consider is not whether the stop caused the injury directly, but whether under all the circumstances it contributed to the collision in the rear which did cause the injury.

The plaintiff testified that all the cab windows were closed, and that the driver's window, in particular, was closed. This would permit an inference that the driver could not have made the hand signal to which he testified. The appellant argues that this is immaterial, since under Section 194, Article 66½ of the Code he had a choice of giving a hand or mechanical signal, and there was

uncontradicted testimony that he gave the mechanical signal by means of the brake. Thomas testified that when Kaplan "throwed his brakes on and stopped, his lights popped on, I put my brakes on, * * * When I seen his lights pop, I throwed my brakes on. * * * He had one tail light on." He also testified the Veteran cab "stopped so quick" that he could not avoid hitting it. Thus, while it is uncontradicted that a signal was given at the time the cab stopped, it may be inferred that no signal was given prior to the full stop, although Kaplan was not faced with any emergency but knew that the cab ahead intended to stop during the time it was covering the half block to the point where it finally came to rest. Section 193, Article 66½ of the Code requires a signal "when there is opportunity to give such signal." We think the jury might properly find that the giving of a belated signal was not due care under the circumstances, and that this contributed to the happening of the accident. *Cf. Greyhound Cab, Inc. v. Sewell,* 172 Md. 699 (unreported) ; 190 A. 814, 815. See also *Mandro v. Vibbert,* 4 Cir., 170 F. 2d 540; *Warput v. Reading Coal Co.,* 250 Ill. App. 450, and *Missouri Pacific Transp. Co. v. Sacker,* 200 Ark. 92, 138 S. W. 2d 371.

The appellant argues strongly that Thomas' testimony is so contradictory that it is not worthy of belief. It is true that Thomas testified that he was driving at from 20 to 25 miles per hour, whereas the testimony was that the cabs were moving at only about 10 miles per hour. Thomas testified that he was about 20 feet behind the Veteran cab and that he did not expect it to stop because he thought stopping between intersections was not allowed. He testified that he could have stopped in 10 feet if he had known the cab ahead was going to stop. It may be assumed that he was not sufficiently alert, in view of his proximity to the overtaken cab, and that this was the primary cause of the accident, but it does not follow that it was the sole cause, if the jury believed that Kaplan did not give any signal

until the moment he stopped. We cannot say that the testimony as to the nature of the stop and the absence of prior signals was wholly incredible or without causal connection, although it was disputed. In passing upon the point we must, of course, consider the testimony in the light most favorable to the plaintiff.

*Judgments affirmed, with costs.*